1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

LYNETTE MANNING,                                    NO.  C13-335-RSL-JPD

9

                        Plaintiff,

10

        v.                                          REPORT AND
                                                    RECOMMENDATION
11

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

12

                        Defendant.

13

14         Plaintiff Lynette Manning appeals the final decision of the Commissioner of the Social

15   Security Administration ("Commissioner") which denied her application for Supplemental

16   Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f,

17   after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

18   the Court recommends that the Commissioner's decision be REVERSED and REMANDED

19   for administrative further proceedings.

20                          I.        FACTS AND PROCEDURAL HISTORY

21         Plaintiff is a 46 year old woman with a high school education and training as a certified

22   nursing assistant.  Administrative Record ("AR") at 31, 124.  Her past work experience

23   includes employment as a certified nursing assistant, cashier, supervisor, support counselor,

24

REPORT AND RECOMMENDATION - 1

1   laundry worker, assembler, janitor, and laborer.  AR at 163-72.  Plaintiff was last gainfully

2   employed in June 2009.  AR at 153.

3         On March 5, 2010, plaintiff filed a claim for SSI payments.  AR at 54-55, 124-27.

4   Plaintiff asserts that she is disabled due to anxiety, panic disorder, depression, bipolar disorder,

5   and diabetes.  AR at 67, 152.

6         The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 56,

7   67.  Plaintiff requested a hearing which took place on August 30, 2011.  AR at 25-53.  On

8   September 9, 2011, the ALJ issued a decision finding plaintiff not disabled and denied benefits

9   based on his finding that plaintiff could perform her past relevant work as a cleaner, and

10   therefore is not disabled.  Alternatively, the ALJ concluded plaintiff is not disabled because

11   there are other jobs that exist in significant numbers in the economy she can perform.  AR at

12   17-19.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals

13   Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that

14   term is defined by 42 U.S.C. § 405(g).  On February 21, 2013, plaintiff timely filed the present

15   action challenging the Commissioner's decision.  Dkt. No. 1.

16                   II.      JURISDICTION

17         Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

18   405(g) and 1383(c)(3).

19                 III.      STANDARD OF REVIEW

20         Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

21   social security benefits when the ALJ's findings are based on legal error or not supported by

22   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

23   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

24   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

1    *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

2    (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

3    medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

4    53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

5    whole, it may neither reweigh the evidence nor substitute its judgment for that of the

6    Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

7    susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

8    must be upheld.  *Id.*

9           The Court may direct an award of benefits where "the record has been fully developed

10   and further administrative proceedings would serve no useful purpose."  *McCartey v.*

11   *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

12   (9th Cir. 1996)).  The Court may find that this occurs when:

13          (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
            claimant's evidence; (2) there are no outstanding issues that must be resolved

14          before a determination of disability can be made; and (3) it is clear from the
            record that the ALJ would be required to find the claimant disabled if he

15          considered the claimant's evidence.

16   *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

17   erroneously rejected evidence may be credited when all three elements are met).

18                      IV.     EVALUATING DISABILITY

19          As the claimant, Ms. Manning bears the burden of proving that she is disabled within

20   the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

21   Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in

22   any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

23   expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

24   423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments

REPORT AND RECOMMENDATION - 3

are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On September 9, 2011, the ALJ issued a decision finding the following:

1.   The claimant has not engaged in substantial gainful activity since March 5, 2010, the application date.

2.   The claimant has the following severe impairments: anxiety disorder, depression, diabetes and diabetic neuropathy of the feet.

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.967(b).  She is capable of occasional interaction with the general public, coworkers or supervisors.  She is able to remember, understand, and carry out simple and detailed instructions or tasks generally required by occupations with an SVP of 1-3.

5.   The claimant is capable of performing past relevant wok as a cleaner. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

6.   The claimant has not been under a disability, as defined in the Social Security Act, since March 5, 2010, the date the application was filed.

AR at 13-19.

REPORT AND RECOMMENDATION - 5

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.    Whether the ALJ properly considered Ms. Manning's panic disorder?

2.    Whether the ALJ properly considered Ms. Manning's bipolar disorder?

3.    Whether the ALJ properly rejected the opinion of Mark A. Koenen, M.D.?

4.    Whether the ALJ properly rejected the opinions of Gary Nelson, Ph.D. and Diane Fligstein, PhD.?

5.    Whether the ALJ properly determined that Ms. Manning could work despite her limitations?

6.    Whether the ALJ properly assessed Ms. Manning's credibility?

Dkt. No. 12 at 1.

## VII.    DISCUSSION

A.    <u>The ALJ Erred by Not Properly Considering Plaintiff's Panic Disorder and Bipolar Disorder</u>

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. § 416.920(c).  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling ("SSR") 85–28).  "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims."  Id. (citing *Bowen*, 482 U.S. at 153–54).  An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity.  *Id*.  "Where the ALJ has found a severe medically determinable impairment at step two of the sequential evaluation analysis, 'all medically determinable impairments must be considered in the remaining steps of the

1  sequential analysis.'"  *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) (quoting *Orn v.*

2  *Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)).

3      In this case, the ALJ found that plaintiff had two severe mental impairments, an anxiety

4  disorder and depression.  AR at 13.  The ALJ's finding was limited to the following assertion:

5  "The claimant has been diagnosed with an anxiety disorder and depression.  These

6  impairments result in mental limitations."  *Id*.  The ALJ did not consider any other mental

7  impairments at step two.  At step four, the ALJ determined that as a result of these

8  impairments, plaintiff would be limited to occasional interaction with the public, coworkers, or

9  supervisors; and remembering, understanding, and carrying out simple and detailed

10  instructions or tasks generally required by occupations with an SVP of 1-3.  AR at 14.

11      Plaintiff contends that she was also diagnosed with panic disorder and bipolar disorder

12  and that the ALJ erred in failing to consider these impairments when assessing the severity of

13  her impairments at step two.  Dkt. No. 12 at 2-5.  Plaintiff argues that the ALJ did not discuss

14  panic disorder or bipolar disorder in any substantive way, and does not appear to have

15  considered these impairments at all in formulating his RFC finding.  *Id*.

16      The medical evidence shows that plaintiff was diagnosed with panic disorder by

17  treating, examining, and reviewing doctors.  AR at 209, 216, 328, 340, 378.  In addition,

18  plaintiff specifically alleged that she was disabled, in part, due to panic attacks.  AR at 56, 67,

19  152.  Plaintiff reported frequent panic attacks characterized by extreme anxiety, diaphoresis,

20  difficulty breathing, and feeling as though she is "having a heart attack."  AR at 230, 325, 378.

21  As a result, she avoids going outside.  AR at 230, 325.  The ALJ noted that plaintiff had been

22  diagnosed with panic disorder with agoraphobia by Don Schimmel, Ph.D., and Mark Koenen,

23  M.D., but did not address this evidence in his decision.  AR at 16.  The ALJ also did not

24

REPORT AND RECOMMENDATION - 7

1    address opinion evidence from Stacy Globerman, M.D., Esther O'Connor, M.D., or Gary

2    Nelson, Ph.D., regarding this impairment.  AR at 209, 216, 340.

3          The medical record also contains evidence that plaintiff suffers from bipolar disorder.

4    In November 2010, after treating plaintiff for more than six months, Sonja Olson, M.D.,

5    concluded that plaintiff suffered from bipolar disorder and adjusted her psychiatric medications

6    to address this diagnosis.  AR at 410.  In addition, on March 2, 2011, Belinda Gustafson, M.D.,

7    performed an initial psychiatric evaluation of plaintiff for the Community Psychiatric Clinic.

8    AR at 387-88.  Dr. Gustafson also diagnosed plaintiff with bipolar disorder and adjusted her

9    psychiatric medications again.  AR at 388.  The ALJ did not discuss bipolar disorder and does

10   not appear to have considered it in his evaluation of the medical record.

11         The Commissioner appears to concede that the ALJ should have included panic

12   disorder and bipolar disorder as severe impairments at step two.  Nevertheless, the

13   Commissioner contends that the error was harmless because the ALJ's RFC included all of the

14   limitations that he found were caused by plaintiff's mental conditions "regardless of the label

15   assigned to those conditions."  Dkt. No. 13 at 5.

16         As a general principle, an ALJ's error may be deemed harmless where it is

17   "'inconsequential to the ultimate nondisability determination.'"  *Molina v. Astrue*, 674 F.3d

18   1104, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155,

19   1162 (9th Cir. 2008)).  The Court looks to "the record as a whole to determine whether the

20   error alters the outcome of the case."  *Id*.  Errors at step two may be deemed harmless where

21   the ALJ adequately accounts for impairments at subsequent steps.  *See Lewis v. Astrue*, 498

22   F.3d 909, 911 (9th Cir. 2007) (finding failure to list an impairment as severe at step two can be

23   deemed harmless where the decision reflects that the ALJ considered any limitations imposed

24   by the impairment at step four).

REPORT AND RECOMMENDATION - 8

1    The Court is unconvinced by the Commissioner's argument that the ALJ's failure to

2    consider plaintiff's panic disorder and bipolar disorder at step two was harmless because the

3    impairments were presumably accounted for in the ALJ's RFC assessment.  Because the ALJ

4    failed to discuss these impairments, a determination as to whether the ALJ considered any

5    limitations imposed by these impairments at step four is impossible to ascertain.  The Court,

6    therefore, cannot determine whether the ALJ's omission was "inconsequential to the ultimate

7    nondisability determination."  *Molina,* 674 F.3d at 1115.

8    The mere fact that the ALJ identified and analyzed other severe mental impairments at

9    step two does not render the omission of separate severe mental impairments harmless.  *See*

10   *Hill*, 698 F.3d at 1161.  In *Hill*, the ALJ found that the claimant had severe mental impairments

11   that included bipolar disorder, mixed personality disorder, and anxiety disorder.  Ms. Hill,

12   however, had also been diagnosed with panic disorder.  The Ninth Circuit held that "[b]ecause

13   the ALJ excluded the panic disorder from Hill's list of impairments and instead characterized

14   her diagnosis as anxiety alone, the residual functional capacity determination was incomplete,

15   flawed, and not supported by substantial evidence in the record."  *Hill*, 698 F.3d at 1161.

16   Thus, *Hill* squarely refutes the Commissioner's assertion that the ALJ's failure to address panic

17   disorder and bipolar disorder at step two was harmless because the ALJ considered any

18   limitations resulting from her mental impairments in making his residual functional capacity

19   determination.

20   In sum, the ALJ erred in his consideration of plaintiff's mental impairments at step two,

21   and this error cannot be deemed harmless.  Accordingly, this case should be remanded for

22   further consideration of plaintiff's mental impairments.

23   //

24   //

B.    The ALJ Erred in His Evaluation of the Medical Evidence

*1. Standard for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn*, 495 F.3d at 631.  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p.

Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

2. *The ALJ's Treatment of the Opinions of Mark A. Koenen, M.D.*

Mark A. Koenen, M.D., conducted a psychiatric evaluation of plaintiff in June 2010. AR at 325-29.  He diagnosed posttraumatic stress disorder ("PTSD"), panic disorder with agoraphobia, and mood disorder not otherwise specified.  AR at 328.  Dr. Koenen opined that plaintiff was moderately impaired in her ability to complete a normal workday or workweek; relate to coworkers, supervisors, and the general public; perform detailed tasks; and tolerate the stress of competitive work.  AR at 329.

The ALJ partially discredited the opinions of Dr. Koenen, stating:

> The opinion of Dr. Koenen is given some weight.  However, he provides no clear basis for limitations in the ability to complete a normal workday or workweek.  His assessment in this regard appears to be based on the claimant's self-report of symptoms, which are not fully credible.  While she has some limitations in the ability to interact with others in a work setting, her daily activities and presentation on mental status examination supports a finding that she is capable of occasional interaction with the public, coworkers and supervisors.  She reports she is close to her family and gets along with her roommate.  She was mildly defensive during the interview but was cooperative. In treatment records from June and July 2010, she was described as exhibiting no unusual anxiety or evidence of depression.  She did not begin counseling until January 2011 and reported marked improvement in February 2011.

AR at 16 (internal citations omitted).

Plaintiff argues that the ALJ erred in failing to adequately explain the weight assigned to Dr. Koenen's opinion.  Dkt. No. 12 at 5-12.  Although the ALJ indicated he gave the opinion "some weight," plaintiff avers that the ALJ only expressly addressed two of the four limitations identified by Dr. Koenen.

1        First, the ALJ discounted the opinion because Dr. Koenen did not provide a "clear

2   basis" for his limitation in plaintiff's ability to complete a normal workday or workweek.  AR

3   at 16.  The ALJ, therefore, reasoned that Dr. Koenen based his conclusion on plaintiff's self-

4   report of symptoms, which the ALJ found incredible.  *Id*.  Although an ALJ may give less

5   weight to a medical opinion that is based "to a large extent" on a claimant's self-reports that

6   have been properly discounted, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), that

7   is not the case here.  The record shows Dr. Koenen's assessment was based not only on

8   plaintiff's self-reports, but also on the doctor's review of plaintiff's medical records; his

9   diagnoses of plaintiff with PTSD, panic disorder with agoraphobia, and mood disorder;

10  plaintiff's psychiatric treatment history; his mental status examination findings; and his clinical

11  observations.  AR at 325-29.  Thus, the ALJ's finding that Dr. Koenen's opinion was simply

12  based on plaintiff's self-report is not supported by the record.  As the ALJ did not point to

13  specific statements by plaintiff which were both not credible and upon which Dr. Koenen

14  relied, this was not a specific and legitimate reason for rejecting Dr. Koenen's opinion.

15       Moreover, the fact that Dr. Koenen relied, in part, on plaintiff's self-reports is not, by

16  itself, a valid reason to question his opinion given the nature of mental illness.  As the Ninth

17  Circuit has observed, "[m]ental health professionals frequently rely on the combination of their

18  observations and the patient's reports of symptoms (as do all doctors) . . . ."  *Ferrando v.*

19  *Comm'r of Soc. Sec. Admin.*, 449 Fed. Appx. 610, 612 n.2 (9th Cir. 2011).  "To allow an ALJ

20  to discredit a mental health professionals opinion solely because it is based to a significant

21  degree on a patient's 'subjective allegations' is to allow an end-run around our rules for

22  evaluating medical opinions for the entire category of psychological disorders."  *Id*.  That Dr.

23  Koenen considered plaintiff's self-report of her symptoms is not a specific and legitimate

24  reason for rejecting his opinion.

REPORT AND RECOMMENDATION - 12

1    Further, as argued by plaintiff, if the ALJ found the basis for Dr. Koenen's opinion

2  unclear, the ALJ should have recontacted the doctor for clarification rather than simply

3  rejecting the opinion.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)

4  ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for

5  proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate

6  inquiry.'") (quoting *Smolen*, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis

7  of [the doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate

8  inquiry, for example, by subpoenaing the physicians or submitting further questions to

9  them.")).  In sum, the ALJ failed to provide specific and legitimate reasons for rejecting Dr.

10 Koenen's opinion as to plaintiff's ability to complete a normal work schedule.

11    Second, the ALJ acknowledged that plaintiff had some limitations in the ability to

12 interact with others in a work setting, but disagreed with Dr. Koenen's conclusion that plaintiff

13 was more limited.  AR at 16.  The ALJ found that plaintiff's daily activities suggest that she

14 was capable of occasional interaction with the public, coworkers, and supervisors.  *Id*.  The

15 ALJ noted that plaintiff is "close to her family" and "gets along with her roommate."  AR at

16 16, 327.  The ALJ also noted that plaintiff was "mildly defensive during the evaluation," but

17 "cooperative."  AR at 16, 327-28.

18    A material inconsistency between a physician's opinion and a claimant's admitted level

19 of daily activities can furnish a specific, legitimate reason for rejecting the physician's opinion.

20 *See, e.g., Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  Here, however, it is unclear

21 how these activities undermine Dr. Koenen's opinion regarding plaintiff's ability to relate to

22 coworkers, supervisors, and the general public.  As plaintiff argues, Dr. Koenen specifically

23 noted that plaintiff was close to her family and gets along with her roommate reasonably well,

24 yet concluded nevertheless that plaintiff's anxiety would impair her ability to interact with

REPORT AND RECOMMENDATION - 13

others in a work setting.  AR at 327.  Dr. Koenen also noted that plaintiff seemed to have few

friends and was anxious around large groups of people and crowds.  AR at 327.  Although

plaintiff may be less symptomatic when interacting with family and friends, it does not

necessarily follow that plaintiff would be less limited in a work setting.

The ALJ also found plaintiff's presentation on mental status examination showed she

had greater ability to interact with others than was found by Dr. Koenen.  AR at 16.  As

plaintiff contends, however, the ALJ did not explain his reasoning or identify any particular

mental status findings that suggested an ability to interact with others at work.  Moreover, Dr.

Koenen's mental status examination findings did not expressly address social interactions and,

therefore, would not necessarily provide particularly relevant measures regarding social

limitations.  Rather, it appears the ALJ has improperly substituted his own interpretation of the

evidence without setting forth sufficient authority or medical evidence to support his

interpretation.  *See Tackett*, 180 F.3d at 1102–03.  Consequently, the ALJ's finding that

plaintiff's performance on mental status examination showed she was capable of greater social

functioning in the workplace is not supported by substantial evidence.

The ALJ also cited two treatment records from June and July 2010, which indicate

plaintiff exhibited "[n]o unusual anxiety or evidence of depression."  AR at 16, 355, 358.  In

addition, the ALJ noted that plaintiff reported "feeling marked improvement in mood" in

February 2011 after starting counseling in January 2011.  AR at 16, 402.

Plaintiff contends that the ALJ again failed to explain how these treatment notes

undermine Dr. Koenen's opinion.  Plaintiff argues that Dr. Koenen specifically noted that there

are periods when plaintiff's anxiety level is within normal limits.  AR at 325, 329.  She further

asserts that the ALJ cannot reasonably draw inferences regarding how plaintiff would respond

in a competitive work environment based upon her presentation in a supportive and structured

1  treatment setting.  In addition, she posits that the treatment notes indicate only that her doctor

2  observed "no *unusual* anxiety," not that she had no anxiety at all.  AR at 355, 358.  Although

3  the ALJ noted plaintiff experienced marked improvement after starting counseling in January

4  2011, plaintiff points out that she actually began counseling in May 2010.  AR at 317, 415.

5        The Court agrees with plaintiff that the ALJ failed to show how these treatment notes

6  contradict Dr. Koenen's opinion that plaintiff has moderate limitations in her ability to interact

7  with others in a work setting.  Rather, the treatment notes show mental health counseling has

8  helped plaintiff and made her potentially able to work.  But there is nothing in the ALJ's

9  discussion of the treatment notes addressing plaintiff's ability to interact with others in a work

10  setting, or the degree to which she has limitations in this area.  *Holohan v. Massanari*, 246 F.3d

11  1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and

12  depression makes some improvement does not mean that the person's impairments no longer

13  seriously affect her ability to function in a workplace.").  Accordingly, the ALJ erred in finding

14  Dr. Koenen's opinion was inconsistent with comments in the record at various times that

15  plaintiff exhibited "no unusual anxiety" or that counseling had improved her mood.

16        Finally, plaintiff correctly notes that the ALJ's decision does not specifically address

17  Dr. Koenen's moderate limitations in tolerating workplace stress and performing detailed tasks.

18  Plaintiff contends the ALJ thus effectively rejected Dr. Koenen's opinions without giving any

19  reasons for doing so.  Dkt. No. 12 at 6.

20        The Commissioner does not dispute that the ALJ's decision does not specifically

21  address Dr. Koenen's moderate limitations relating to workplace stress and performance of

22  detailed tasks.  Nevertheless, the Commissioner contends that the "term moderately impaired

23  cannot be directly translated into a limitation on a claimant's functional capacities," and that

24  the ALJ appropriately interpreted Dr. Koenen's opinion as consistent with a limitation to

REPORT AND RECOMMENDATION - 15

1    performing simple and detailed instructions or tasks generally required by occupations with an

2    SVP of 1-3.  Dkt. No. 13 at 9.  The Commissioner argues that "[t]his Court should grant

3    deference to the ALJ's interpretation of Dr. Koenen's opinion and find that the ALJ adequately

4    explained the weight he assigned to this opinion."  *Id.*

5            Plaintiff replies that the ALJ offered no such interpretation of Dr. Koenen's opinion and

6    that this Court may not affirm his decision on reasons not offered by the ALJ.  Dkt. No. 14 at 5

7    (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009)).  Plaintiff

8    further contends that the Commissioner's argument is inconsistent with the ALJ's own

9    findings.  Plaintiff points out that had the ALJ shared defendant's view of moderate limitations,

10   he could have simply endorsed Dr. Koenen's opinions rather than rejecting the limitations

11   relating to social interaction and regular work attendance.  *Id.*

12           The Court agrees with plaintiff that Dr. Koenen's opinions directly conflict with the

13   ALJ's conclusion that plaintiff could perform simple and detailed instructions or tasks required

14   by occupations with an SVP of 1-3.  The ALJ's failure to either include moderate limitations

15   on stress tolerance and detailed tasks in his RFC finding or provide an explanation for rejecting

16   Dr. Koenen's opinion as to these limitations was error.  On remand, the ALJ should reconsider

17   Dr. Koenen's opinion.  If the ALJ declines to accept Dr. Koenen's opinion, the ALJ should

18   provide specific and legitimate reasons, supported by substantial evidence in the record.

19                   *3.  The ALJ's Treatment of the Opinions of the Non-Examining Psychologists*

20           Plaintiff next argues that the ALJ erred in evaluating the opinions of the State agency

21   consultants, Gary Nelson, Ph.D., and Diane Fligstein, Ph.D.  Dkt. No. 12 at 12-14.  In July

22   2010, Dr. Nelson reviewed the medical records and prepared a Mental Residual Functional

23   Capacity Assessment.  AR at 331-33.  Dr. Nelson found plaintiff was capable of simple tasks

24   with simple instructions.  AR at 333.  He also indicated that plaintiff should have minimal

1    contact with coworkers.  *Id.*  Dr. Fligstein affirmed Dr. Nelson's assessment in September

2    2010.  AR at 364.

3        The ALJ gave "some weight" to the doctors' opinions, but disagreed with the

4    limitations set forth in their opinions.  Dr. Nelson found plaintiff was limited simple tasks with

5    simple instructions, but the ALJ concluded plaintiff could carry out detailed instructions or

6    tasks required by occupations with an SVP of 1-3.  AR at 17, 333.  Dr. Nelson also found

7    plaintiff should have minimal contact with coworkers, but the ALJ found plaintiff was capable

8    of occasional with coworkers.  *Id.*  The ALJ's stated reason for rejecting Dr. Nelson's opinion

9    was that plaintiff reported in February 2011 "improved symptoms with mental health

10   treatment."  AR at 17.

11       The treatment note cited by the ALJ states in full:  "Currently in counseling and feeling

12   marked improvement in mood.  States 'I feel like I have hope, that it isn't hopeless.'  Has

13   psychiatric intake scheduled.  Has regular meetings scheduled for counseling.  Has had some

14   success at times with breathing exercises, but not consistent."  AR at 402.

15       Plaintiff argues that the ALJ erred in rejecting the doctors' opinions without referencing

16   specific evidence in the record which justifies his decision.  She contends that "the ALJ

17   articulated no rationale for concluding that a vague report of hopefulness at one medical

18   appointment suddenly rendered [her] capable of performing detailed tasks or having greater

19   interaction with others."  Dkt. No. 14 at 8.  The Court agrees with plaintiff.

20       The ALJ's citation to a single treatment note is not a specific and legitimate reason for

21   rejecting Dr. Nelson's opinion that plaintiff was limited to simple tasks and minimal contact

22   with coworkers.  While plaintiff reported "improvement" in February 2011, the ALJ did not

23   cite any records showing plaintiff was more capable than found by Dr. Nelson.  Given

24   plaintiff's diagnoses and the longitudinal evidence, it was error for the ALJ to conclude that

1    one comment in a treatment note sufficiently demonstrated plaintiff was capable of performing

2    detailed tasks or having greater interaction with others.  As noted above, "[t]hat a person who

3    suffers from severe panic attacks, anxiety, and depression makes some improvement does not

4    mean that the person's impairments no longer seriously affect her ability to function in a

5    workplace." *Holohan*, 246 F.3d at 1205.  As the ALJ did not explain how such improvement

6    rendered her capable of performing detailed tasks or having greater interaction with others, the

7    Court concludes that the ALJ erred in rejecting the opinions.  On remand, the ALJ should

8    reassess the opinions by Drs. Nelson and Fligstein.

9          C.      The ALJ Erred in Finding Plaintiff Could Perform Past Relevant Work

10         At step four, an ALJ must determine whether a claimant has the residual functional

11   capacity to perform her past relevant work.  If a claimant can perform past relevant work, the

12   claimant is not disabled.  The ALJ determined that plaintiff was not disabled because she could

13   perform her past relevant work as a cleaner as actually and as generally performed.  AR at 17.

14         Plaintiff contends that substantial evidence does not support the ALJ's finding that

15   plaintiff could perform her past relevant work as a cleaner because he failed to make "specific

16   findings" as to "the physical and mental demands" of the past work as required.  Dkt. No. 12 at

17   14.  The Commissioner did not respond to plaintiff's argument.

18         Although plaintiff bears the burden at step four, the ALJ retains a duty to make factual

19   findings to support his conclusion, including a determination of whether a claimant can

20   perform the actual demands and job duties of her past relevant work or the functional demands

21   and job duties of the occupation as generally performed in the national economy.  *Pinto v.*

22   *Massanari*, 249 F.3d 840, 844–45 (9th Cir. 2001) (citing SSR 82–61).  A determination as to a

23   claimant's ability to perform past relevant work "must be developed and explained fully in the

24

1    disability decision[,]" and "every effort must be made to secure evidence that resolves the issue

2    as clearly and explicitly as circumstances permit."  SSR 82–62.

3            An ALJ may rely on two sources "to define a claimant's past relevant work as actually

4    performed:  a properly completed vocational report, SSR 82–61, and the claimant's own

5    testimony, SSR 82–41."  *Pinto*, 249 F.3d at 845.  The Dictionary of Occupational Titles

6    ("DOT") is generally considered the best source for determining how past relevant work is

7    generally performed.  *Id*. at 845–46.

8            In this case, the ALJ did not make any findings regarding the functional demands or

9    duties of plaintiff's prior job as a cleaner as performed by her or as generally required by

10   employers nationally.  Because the ALJ failed to make any findings regarding the duties or

11   demands of that job as actually or as generally performed, substantial evidence does not

12   support the ALJ's step four finding.  *See Carmickle*, 533 F.3d at 1167 ("The ALJ always 'has a

13   duty to make the requisite factual findings to support his conclusion' at step four.  Otherwise

14   the court has no basis on which to review the agency's decision."); *see also Dealmeida v.*

15   *Bowen*, 699 F. Supp. 806, 807 (N.D. Cal. 1988) ("[An] ALJ must make specific findings of

16   fact as to . . . the physical and mental demands of the past occupation.").

17           Plaintiff also contends that substantial evidence does not support the ALJ's finding that

18   she had past relevant work as a cleaner because she did not work as a cleaner at the substantial

19   gainful activity level.  Dkt. No. 12 at 15.  A job may be considered past relevant work only if it

20   involved "substantial gainful activity."  *Lewis*, 236 F.3d at 515.  The primary factor in

21   determining whether a past work is substantial gainful activity "will be the earnings [the

22   employee] derive[d] from the work activity."  20 C.F.R. § 416.974(a)(1).  There is a rebuttable

23   presumption the claimant either was or was not engaged in substantial gainful activity if the

24

1   claimant's monthly earnings are above or below a certain amount established by the

2   Commissioner's Earnings Guidelines.  20 C.F.R. § 416.974(b)(2)-(3).

3       The ALJ found plaintiff worked as a self-employed cleaner in 2008 and 2009.  AR at

4   17, 137.  Work is presumed to be substantial gainful activity if the claimant earned more than

5   $940 per month (or $11,280 per year) in 2008, and more than $980 per month (or $11,760 per

6   year) in 2009.  *See* www.sssa.gov/oact/COLA/sga.html.  Plaintiff's earning records show that

7   she earned $8,972.00 in 2008, and $7,111.00 in 2009.  AR at 137.  Thus, plaintiff's earnings

8   for 2008 and 2009 were below substantial gainful activity levels for the respective years.

9       The Commissioner does not dispute that plaintiff's earnings were below substantial

10  gainful activity levels.  Dkt. No. 13 at 14-15.  This creates a rebuttable presumption that

11  plaintiff's prior work did not constitute substantial gainful activity, and the burden of proof

12  shifted to the Commissioner to prove otherwise.  *Lewis*, 236 F.3d at 515.  To overcome the

13  earnings presumption, the ALJ was required to point to substantial evidence, aside from

14  earnings, that plaintiff had engaged in substantial gainful activity.  *Id.*  The Commissioner,

15  however, points to no evidence that would overcome the presumption that plaintiff's prior

16  work was not substantial gainful activity.  Because the ALJ improperly treated plaintiff's past

17  work as substantial gainful activity without explaining this determination, as was his burden,

18  the ALJ erred.  On remand, the ALJ should reconsider whether plaintiff prior job as a cleaner

19  was substantial gainful activity.

20       D.    The ALJ's Errors in Evaluating the Medical Evidence Require a Reevaluation
             of the Step Five Analysis on Remand

21

22       The Medical–Vocational Guidelines or "grids" present a short-hand method for

23  determining the availability and numbers of suitable jobs for claimants, addressing factors

24  relevant to a claimant's ability to work, such as age, education, and work experience.  *See* 20

C.F.R. pt. 404, Subpt. P, App. 2.  Their purpose is to streamline the administrative process and encourage uniform treatment of claims.  *Tackett*, 180 F.3d at 1101.

An ALJ may rely on the grids to meet his burden at step five.  *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).  "They may be used, however, 'only when the grids accurately and completely describe the claimant's abilities and limitations.'"  *Id*. (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)).  "When a claimant's non-exertional limitations are 'sufficiently severe' so as not to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable[ ]" and the testimony of a vocational expert is required.  *Id*. (quoting *Desrosiers v. Sec'y of Health & Human Servs*., 846 F.2d 573, 577 (9th Cir. 1988)); *accord Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("[A]n ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case.").

The ALJ in this case concluded that plaintiff's nonexertional limitations would not have a significant impact on her ability to perform unskilled work.  AR at 18.  He, therefore, deemed a finding of "not disabled" appropriate under the grids.  AR at 19.

Plaintiff argues that the ALJ erred in relying on the grids because plaintiff has nonexertional limitations not contemplated by the grids.  Dkt. No. 12 at 15.  Plaintiff asserts that the ALJ specifically found that she was limited to unskilled work with occasional interaction with the public, co-workers, or supervisors – yet one of the requirements of unskilled work is the ability to respond appropriately to coworkers and supervisors.  *Id*. (citing SSR 85-15).  Plaintiff contends that a substantial loss of this ability would significantly limit the occupational base, precluding use of the grids.  Additionally, plaintiff asserts that the more

restrictive findings of Drs. Koenen, Nelson, and Fligstein improperly rejected by the ALJ as well as her panic attacks would preclude use of the grids.  *Id*.

As discussed above, the Court has found that the ALJ erred in evaluating the medical evidence.  Because the ALJ did not properly consider all of the medical evidence, it follows that the ALJ may have erred by relying upon the grids.  Accordingly, on remand, the ALJ shall reconsider whether to obtain vocational expert testimony after reevaluating the pertinent medical evidence and, if applicable, revising plaintiff's RFC.  The ALJ shall then determine whether plaintiff's nonexertional limitations are "sufficiently severe" so as to significantly limit the range of work permitted by plaintiff's exertional limitations.  If so, the ALJ shall solicit testimony from a vocational expert at a new hearing.

> E.   <u>The ALJ's Errors in Evaluating the Medical Evidence Require Reassessment of Plaintiff's Credibility on Remand</u>

A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. § 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. § 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722.  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

1    When evaluating a claimant's credibility, the ALJ must specifically identify what

2    testimony is not credible and what evidence undermines the claimant's complaints; general

3    findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may

4    consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

5    inconsistencies in testimony or between testimony and conduct, daily activities, work record,

6    and testimony from physicians and third parties concerning the nature, severity, and effect of

7    the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Soc. Sec.*

8    *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

9    The ALJ in this case found that "the claimant's medically determinable impairments

10   could reasonably be expected to cause the symptoms; however, the claimant's statements

11   concerning the intensity, persistence and limiting effects of these symptoms are not credible."

12   AR at 15.  Because this case is being remanded for reconsideration of the medical evidence,

13   and the Court has found that credibility determinations are inescapably linked to conclusions

14   regarding medical evidence, 20 C.F.R. § 416.929, the ALJ's credibility finding is also reversed

15   and the issue remanded.  After reevaluating the medical evidence of record, the ALJ will be in

16   a better position to evaluate plaintiff's credibility.  On remand, the ALJ should properly assess

17   plaintiff's testimony, and provide clear and convincing reasons for rejecting it should such a

18   conclusion be warranted.

19        F.     Remand for Further Proceedings is Required

20   The Court has discretion to remand for further proceedings or to award benefits.  *See*

21   *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The Court may direct an award of

22   benefits where "the record has been fully developed and further administrative proceedings

23   would serve no useful purpose."  *McCartey*, 298 F.3d at 1076.

24

REPORT AND RECOMMENDATION - 23

1

> Such a circumstance arises when:  (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting the claimant's evidence; (2) there are no
> outstanding issues that must be resolved before a determination of disability can
> be made; and (3) it is clear from the record that the ALJ would be required to
> find the claimant disabled if he considered the claimant's evidence.

2

3

4

*Id.* at 1076–77.

5

> While plaintiff succeeds in establishing errors, it is not apparent either that no

6

outstanding issues remain to be resolved, or that it is clear from the record that the ALJ would

7

be required to find plaintiff disabled if he properly considered plaintiff's evidence.  Therefore,

8

the Court finds the proper remedy to be remand for further proceedings.

9

VIII.   CONCLUSION

10

> For the foregoing reasons, the Court recommends that this case be REVERSED and

11

REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

12

instructions.  A proposed order accompanies this Report and Recommendation.

13

> DATED this 23rd day of October, 2013.

14

15

James P. Donohue
_____

16

JAMES P. DONOHUE
United States Magistrate Judge

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 24